IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LACIE LOCHIANO on Behalf of Herself and All Others Similarly Situated, ) ) ) Plaintiff, ) ) v. ) ) COMPASIONATE CARE, LLC, et al., ) ) Defendants. ) | Case No. 10-01089-CV-W-DGK |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT FOR PLAINTIFF

This case arises from Defendants Compasionate Care, LLC,[1] Andi Didrikson, and Danyel Didrikson's alleged failure to pay overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Pending before the Court are cross-motions for summary judgment on behalf of Plaintiff (Doc. 44) and Defendants (Docs. 42 & 53). Having fully considered the parties' arguments, the Court grants summary judgment to Plaintiff with regard to the FLSA's companionship services exemption. Finding that there is a genuine issue of material fact regarding all other issues, the Court denies the remainder of both parties' motions for summary judgment.

### Background

Defendant Compasionate Care, LLC ("Compasionate Care") is a for-profit limited liability corporation organized under Missouri law to serve and support individuals with developmental disabilities in their individual residences rather than in an institutional setting. Each consumer served by Compasionate Care receives services in Independent Supportive Living locations

---

[1] The Court notes that this case was filed against "Compassionate Care, LLC," and Plaintiff continues to refer to Defendant in this manner. However, Defendants spell the company's name as "Compasionate Care, LLC," and the

("ISLs"). ISLs are two bedroom apartments or duplexes located at one of two apartment complexes in the Kansas City area. The services provided by Compasionate Care's employees, who are called Direct Care Staff, are intended to normalize the lives of individuals with developmental disabilities by providing them with fellowship, care, training, and protection, in conjunction with habilitation training.

Plaintiff commenced employment with Compasionate Care as Direct Care Staff on May 2, 2007. During the course of her employment, Plaintiff provided household work, such as meal preparation, bed making, and laundry, for individuals served by Compasionate Care. Compasionate Care terminated Plaintiff's employment effective October 30, 2009. Plaintiff now claims that during her employment, Defendants incorrectly classified her as an exempt employee and willfully refused to pay her for all overtime compensation at a rate of one and one-half times the regular rate of pay as required under the FLSA.

**Summary Judgment Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must evaluate the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit

Court will accordingly refer to it as such.

of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248.

## Discussion

The FLSA requires employers to pay all covered employees at least time and half for all hours worked in excess of forty hours. 29 U.S.C. § 207(a)(1). To establish a prima facie case for overtime under the FLSA, a plaintiff must prove four things. First, a plaintiff must show the existence of an employment relationship. *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993). Second, a plaintiff must show that she was covered by the FLSA. *Baker v. Stone Cnty., Mo*, 41 F. Supp. 2d 965, 978 (W.D. Mo. 1999). Third, a plaintiff must establish the defendant's actual or constructive knowledge of overtime hours worked without proper compensation for all hours in excess of forty in one workweek. *Brennan v. Qwest Commc'n Intern., Inc.*, 727 F. Supp. 2d 751 (D. Minn. 2010); *see also* 29 C.F.R. § 785.11 (including in the definition of work time "work [that is] not requested but suffered or permitted"). Finally, a plaintiff must demonstrate that she was not properly compensated under the Act and must prove the amount of the liability. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff has the burden of proof to establish her prima facie case.

3

## I. Plaintiff was an employee of Defendant Compasionate Care and Defendants Andi and Danyel Didrickson.

The existence of an employer-employee relationship is a prerequisite to an FLSA claim. 29 U.S.C. § 203(d); *see also* 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer."). Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d); *Solis v. Hill Country Farms, Inc.*, 808 F. Supp. 2d 1105, 1113 (S.D. Iowa 2011). In determining employer status, "economic reality" prevails over technical common law concepts of agency. *Goldberg v. Whitaker,* 366 U.S. 28, 33 (1961). More than one entity or individual may qualify as an employer for purposes of an FLSA action. *See Falk v. Brennan,* 414 U.S. 190, 195 (1973).

The Eighth Circuit has not articulated a standard for determining when an entity is an employer under the FLSA. District courts within the Eighth Circuit frequently apply a four factor test that considers whether the alleged employer (1) had power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined employees' rate and method of payment, and (4) maintained employment records. *See Baker*, 41 F. Supp. 2d at 980; *Catani v. Chiodi,* No. Civ. 00–1559, 2001 WL 920025, at *6 (D. Minn. Aug. 13, 2001).

In her motion for summary judgment, Plaintiff asserts that, despite Defendants Andi and Danyel Didrikson's denial, they are employers under the FLSA. Defendants, however, do not address this argument in their reply, and, therefore, the Court treats this argument as conceded. For purposes of the present action, Plaintiff was employed by Defendants Compasionate Care, LLC, Andi Didrikson, and Danyel Didrikson.

4

**II. Plaintiff was covered by the FLSA during 2008 and 2009. There is a genuine issue of fact concerning whether Plaintiff was covered by the FLSA from October to December of 2007.**

**A. Plaintiff is not excluded from FLSA coverage by the companionship services exemption.**

Plaintiff must next prove that her employment was covered by the FLSA. The parties agree that if the companionship services exemption does not apply, Plaintiff is covered by the FLSA during 2008 and 2009.

The FLSA provides several exceptions to its general requirement that an employee must be paid overtime and minimum wages for all hours worked. Pursuant to §213(a)(15) of the Act, the minimum wage and overtime provisions do not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." Congress enacted the companionship services exemption to "enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them." *Welding v. Bios Corp.,* 353 F.3d 1214, 1218 (10th Cir. 2004) (quoting *Lott v. Rigby,* 746 F. Supp. 1084, 1087 (N.D. Ga. 1990)). Like all exemptions to FLSA, the defendant has the burden of affirmatively proving the exemption applies, *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 999 (8th Cir. 2003), and the exemption must be strictly construed. *Bowe v. SMC Elec. Prods.*, 935 F. Supp. 1126, 1132 (D. Colo. 1996); *Buckner v. Florida Habilitation Network, Inc.,* 489 F.3d 1151, 1154 (11th Cir. 2007).

5

The United States Department of Labor ("DOL") has furthered clarified the companionship services exemption, defining "domestic service employment" as "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R. § 552.3. The regulation also provides a non-exhaustive list of examples, including cooks, butlers, valets, maids, nurses, and chauffeurs, among others. *Id*.

In the present case, the parties dispute whether Plaintiff was employed in a "private home" as required by the Act's governing regulations. The FLSA does not define the term "private home" under 29 C.F.R. § 552.3, and neither the Supreme Court nor the Eighth Circuit has interpreted its meaning. The Tenth Circuit, however, has evaluated the meaning of "private home" as it pertains to the companionship services exemption, noting that the "definition of 'private home' exists along a continuum," at one end of which is "[a] traditional family home in which a single family resides," and at the other end of which is "an institution primarily engaged in the care of the sick, the aged, the mentally ill or a boarding house used for business or commercial purposes." *Welding*, 353 F.3d at 1218 (internal citations omitted). The Tenth Circuit further elaborated factors to determine whether a dwelling constitutes a "private home:"

> whether the client lived in the living unit as his or her private home before beginning to receive the services . . . (2) who owns the living unit . . . (3) who manages and maintains the residence . . . (4) whether the client would be allowed to live in the unit if the client were not contracting with the provider for services . . . (5) the relative difference in the cost/value of the services provided and the total cost of maintaining the living unit (including government subsidies) . . . (6) whether the service provider uses any part of residence for the provider's own business purposes.

*Id*. at 1219-21.

Although the Court is not bound by this analysis, the Western District has previously applied it to determine whether the companionship services exemption applies, and the Court finds it

6

instructive here. *See Solis v. FirstCall Staffing Solutions, Inc.*, No. 08-0174-CV-W-ODS, 2009 WL 3855702, at *5 (W.D. Mo. Nov. 18, 2009); *see also Clopton v. TSS, Inc.*, No. 10-1229-JAR-JPO, 2011 WL 346478, at *6 (D. Kan. Feb. 2, 2011). Analyzing each factor in turn, the Court finds that Plaintiff is not covered by the companionship services exemption, and, therefore, is subject to the FLSA.

### 1. Did the consumer reside in the living unit as his or her private home before beginning to receive Defendants' services?

The first factor the Court considers is whether the consumer resided in the living unit prior to receiving Defendants' services. Defendants maintain that the consumers to whom Plaintiff provided services either lived in their current housing, ISL, *before* Compasionate Care began providing services or moved into their ISL *simultaneously with* the commencement of Compasionate Care's services. This statement, however, is misleading, as Defendants provide only one example of an individual who lived in her duplex prior to receiving Defendants' services. Moreover, this one individual was not served by Plaintiff during the course of her employment. All other clients moved into their apartments upon the commencement of Defendants' services.

Furthermore, there is evidence that if a consumer terminates her relationship with Compasionate Care, she is not necessarily entitled to stay in her residence. For example, Defendants admit that if a consumer who is living in a dual-occupancy apartment[2] terminates her relationship with Compasionate Care, she will be allowed to stay in the residence only if (1) her roommate also terminates her relationship with Compasionate Care, or (2) her roommate agrees to move out of the residence (Doc. 43, ¶ 74, 75). Therefore, this factor weighs in favor of the housing units not being

---

[2] The two ISLs in which Plaintiff worked were both dual-occupancy apartments.

7

private homes as anticipated by the Act, such that Plaintiff is not subject to the companionship services exemption.

### 2. Who owns the living unit?

The housing units are not owned by Defendants or their clients. Rather, the individual consumers lease the apartments from a third-party landlord. While this is "some indication that it is a private home," this is not "as powerful an indication as ownership." *FirstCall Staffing*, 2009 WL 3855702, at *3 (quoting *Welding*, 353 F.3d at 1219). Therefore, this factor weighs only slightly in favor of Defendants' position that Plaintiff is exempt from the provisions of the FLSA.

### 3. Who manages and maintains the living unit?

The third factor to consider is who manages and maintains the living units. In *FirstCall Staffing*, the Court explained that "[t]his factor asks 'who provides the essential things that the client needs to live there, such as paying the mortgage or rent, paying for gas, electricity, and water, providing clean linens and clothes, and providing food?'" *FirstCall Staffing*, 2009 WL 3855702 at *3 (quoting *Welding*, 353 F.3d at 1219). In *FirstCall Staffing*, the employer facilitated the payment of rent and utilities with the use of client funds from social security and disability benefits. *Id.* at *4. Based on this arrangement, the *FirstCall Staffing* court noted that "the uncontroverted facts show that without FirstCall's assistance Clients would not have been able to provide for themselves at [their residence]," and, therefore, the court found this weighed against the residences being "private homes" as anticipated by the FLSA. *Id*. at *4.

Here, like *FirstCall Staffing*, Plaintiff asserts that Defendants manage and maintain the units because employees of Compasionate Care facilitate the payment of rent, utilities, and food for clients living in the facilities. Defendants, on the other hand, contend that Compasionate Care does

8

not maintain the units because it does not provide clothes, furniture, or food and is not responsible for maintenance or repairs of the apartments.

The Court finds these facts almost directly analogous to those in *FirstCall Staffing*. Although Defendants themselves do not provide the funds to pay for rent, gas, electricity, water, food, or furnishings, the evidence clearly indicates that without the assistance of Compasionate Care, clients would not be able to complete tasks such as paying bills, cleaning the house, shopping for groceries, or preparing meals. Therefore, this factor weighs against Defendants position that the residences are "private homes" under the FLSA.

**4. Would the consumer be allowed to live in the unit if he or she were not contracting with the provider for services?**

As discussed above, although the consumers sign individual leases with the landlord to rent the ISLs, it is not automatically the case that if an individual changes service providers they are allowed to remain in their residence. According to Defendants' own admission, a consumer only remains in the home if the consumer does not have a roommate, or, if the consumer does have a roommate, if the roommate also terminates Compasionate Care's services or agrees to move out of the home. Thus, no individual lives in a home to which Defendant provides services without receiving Defendants' services. This factor weighs against a finding that the residences are "private homes."

**5. What is the relative difference in cost/value of the services provided and the total cost of maintaining the home?**

9

This factor is "directly related to the purpose for which the living unit is primarily maintained," and, if "the cost/value of the services is a substantial portion of the total cost of maintaining the living unit, that weighs in favor of it not being a private home." *Welding*, 353 F.3d at 1220. In *FirstCall Staffing*, the court found that this factor weighed against the residence being a "private home" because the monthly cost of FirstCall's services ranged between $4,000 to $9,000 per person, while the monthly room and board was only $314 to $714. *FirstCall Staffing*, 2009 WL 3855702, at *4.

Here, Defendants argue that this factor is meaningless in determining whether the services are provided in a "private home" because the definition of companionship services, necessarily implies that services are needed for individuals who cannot care for themselves. While, as Defendants note, this factor may be more important when the home is closer to the institution side of the spectrum, it is still relevant here. The Compasionate Care consumers pay between $4,000 to $8,000 per month to receive Defendants' service and the total monthly home maintenance costs are only $380 and $430 per month. Accordingly, this factor weighs against Defendants' contention that the residences are "private homes" as contemplated by the FLSA's governing regulations.

### 6. Does the service provider use any part of the residence for the service provider's own business purpose?

The sixth and final factor looks to see whether the service provider uses any part of the clients' residence for business purposes. Defendants claim that Compasionate Care does not use any part of the residence for business purposes; however, they admit that Compasionate Care does maintain books and notes documenting the services staff provided to the consumer at the consumer's home. While Defendants argue that these records are similar to an individual's own personal

10

records regarding her care, they are used as business records here. Additionally, Defendants admit that they maintain employee time records in a locked cabinet in the client's residence. Such records have no personal purpose, and therefore, this factor weighs against a finding that the residences are "private homes" under the FLSA.

For the reasons discussed above, considering all six factors in conjunction, the Court finds that the ISLs are not "private homes" as contemplated by the governing regulations to the FLSA, and, therefore, the companionship services exemption is inapplicable.

**B. There is a genuine issue of fact concerning whether Plaintiff was covered by the FLSA from October to December of 2007.**

Because the companionship services exemption does not apply, the Court must now determine for what period of time Plaintiff was covered by the FLSA. The parties do not dispute that Defendant Compasionate Care was an FLSA-covered enterprise in 2008 and 2009.[3] Defendant, however, contests that Compasionate Care was a covered entity in 2007.[4] Under the FLSA, coverage may be found on an individual or enterprise level. Individual coverage exists where an employee is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1), 212(c). Enterprise coverage exists where the employer is an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1).

Plaintiff maintains that in 2007, even though Compasionate Care was not an FLSA-covered enterprise, she was individually covered by the FLSA because she was "engaged in commerce or in the production of goods for commerce" through her work activities such as (1) traveling across state

---

[3] Defendants concede that Compasionate Care is an employer engaged in commerce and that it had sufficient gross operating revenue for enterprise coverage in 2008 and 2009, but not for 2007.
[4] Compasionate Care did not generate revenues in 2007 sufficient to be considered a covered enterprise under the FLSA in that year.

11

lines in connection with her work; (2) using her cell phone to make interstate calls to Defendants and other employees in connection with her work; (3) assisting clients in purchasing goods that had been transported in interstate commerce and (4) using goods that had moved in interstate commerce in connection with her job duties. Specifically, Plaintiff alleges that she assisted Defendants' clients in attending doctor's appointments and in traveling to and from the grocery store, which required travel between Kansas and Missouri. Additionally, Plaintiff contends that she regularly assisted Defendants' clients in purchasing and transporting goods that had been moved in interstate commerce.

The only support Plaintiff provides for these allegations, however, is her own conclusory statements in an affidavit generated for purposes of her summary judgment motion. Defendants controvert these facts, denying that Plaintiff traveled across state lines in connection with her work during November and December 2007. Additionally, Defendants deny that Plaintiff made intrastate phone calls to them or to other employees as part of her job. Therefore, there is a genuine issue of material fact regarding whether Plaintiff was covered by the FLSA from the time she began employment in October 2007 to December 2007.

**III.     Defendants knew that Plaintiff worked overtime hours without overtime pay.**

As the third requirement for FLSA coverage, Plaintiff must establish Defendants' actual or constructive knowledge of overtime hours worked without proper compensation for all hours in excess of forty in a workweek. Plaintiff asserts that she meets the third requirement of a prima facie case because Defendants admitted that she regularly worked in excess of forty hours in a workweek without receiving overtime premiums pursuant to the FLSA. Defendants do not controvert this fact in their response to Plaintiff's motion, therefore, the Court finds Plaintiff has satisfied this element.

**IV.	There is a genuine question regarding whether Plaintiff is entitled to unpaid overtime and liquidated damages under the FLSA.**

**A.	There is a genuine issue of material fact regarding whether the three-year statutory period applies.**

The statute of limitations for FLSA claims is two years unless the claim involves a willful violation. In that case, the statutory period is extended to three years. 29 U.S.C. § 255. A violation is willful if "the employer either knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute." *Boyle v. Barber & Sons, Co.*, No. 03-0574-CV-W-FJG, 2005 WL 6561489, at *4 (W.D. Mo. Mar. 4, 2005) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). The plaintiff bears the burden of proving that a violation is willful. *Id.*

Plaintiff argues that she is entitled to the three year statutory period because Defendants should have known that the companionship services exemption did not apply and they have provided no evidence supporting their basis for exempting Plaintiff from the requirements of the FLSA. Defendants, however, present ample evidence, as discussed above, supporting their position that Compasionate Care provided services to consumers in their "private home." Accordingly, there is a genuine issue of material fact as to whether Defendants' conduct was willful such that Plaintiff is entitled to the three year statute of limitations.

**B.	There is a genuine issue of material fact regarding whether Plaintiff's sleep shift hours are compensable.**

Plaintiff also urges the Court to grant summary judgment with regard to whether her "sleep hours" should be considered in calculating her total compensable overtime hours. Generally, in

13

calculating the total number of compensable hours, "the employer must include all time the employee is required to be on the premises or on duty and all time the employee is suffered or permitted to work." 29 C.F.R. § 552.101(c). Under the FLSA, whether sleep time is work time "is a question of fact," which must be determined "in accordance with common sense and the general concept of work or employment." *Central Missouri Tel. Co. v. Conwell*, 170 F.2d 641, 646 (8th Cir. 1948). In some circumstances, sleeping periods may be excluded from compensable hours by agreement if the employer provides "adequate sleeping facilities" where "the employee can usually enjoy an uninterrupted night's sleep." 29 C.F.R. § 785.22(a).

Here, Plaintiff argues she is entitled to summary judgment because there was no agreement to exclude sleeping hours from her compensation, and she was not given "adequate sleeping facilities" where she was able to get a full night's sleep in a "home-like environment." *Hultgren v. County of*

*Lancaster, Nebraska*, 913 F.2d 498, 506 (8th Cir. 1990). Specifically, Plaintiff claims that she was "regularly awakened" to attend to the needs of consumers.

This argument fails for two reasons. First, Defendants present evidence that at the time of Plaintiff's hiring, she agreed to receive a higher wage for "awake" time in exchange for not receiving overtime compensation for hours worked in excess of forty per week. Furthermore, Plaintiff's time records indicate that during her twenty-four shifts, she frequently slept for more than five hours. Thus, there is a genuine issue of material fact regarding whether Plaintiff had an agreement to exclude sleeping hours from compensation and whether she was given "adequate sleeping facilities."

14

## C. There is a genuine issue of material fact concerning the calculation of Plaintiff's back wages.

Plaintiff has the burden of showing that she performed work for which she was not properly compensated; however, it is Defendants' duty to maintain accurate and complete records of Plaintiff's employment. *See* 29 U.S.C. § 211(c). If an employer's records are unavailable or inaccurate, an employee may satisfy her burden by introducing evidence that proves overtime pay due under a "just and reasonable" inference. *Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990).

Here, Plaintiff argues Defendants' records are demonstrably deficient, and, therefore, Plaintiff should be allowed to estimate the amount of her unpaid wages. However, this assertion is not entirely accurate. Defendant produced time records for work performed by Plaintiff from May 2007 to October 2009. Records were not provided for the months of April 2008 and January and March of 2009. These missing records are not sufficient to allow Plaintiff to claim that Defendants' records are "demonstrably deficient" such that she can calculate her damages by estimating the average number of hours worked in each workweek. Rather, such determination, along with the average wage rate to which Plaintiff is entitled, is a question of fact for the jury.

## D. There is a genuine issue of material fact regarding whether Plaintiff is entitled to liquidated damages.

Under the FLSA, any employer who fails to properly pay overtime shall be liable to the employee in the amount of the unpaid overtime pay and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are mandatory unless the employer meets its

15

burden of demonstrating that its actions were taken "in good faith" and with "reasonable grounds for believing" that it complied with the FLSA. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008). "The 'good faith' requirement is a subjective standard . . . [requiring] an honest intention to ascertain and follow the dictates of the FLSA." *Id.* at 942 (quoting *Hultgren*, 913 F.2d at 509). For the same reasons the Court denied Plaintiff's request for summary judgment on whether Defendants' actions were willful, the Court finds there is a genuine issue of material fact with regard to Plaintiff's entitlement to liquidated damages.

## Conclusion

For the reasons stated herein, Plaintiff is granted summary judgment with respect to whether the FLSA's companionship services exemption applies. Therefore, Plaintiff's motion for summary judgment is granted in part, and Defendant's motion for summary judgment is denied.

**IT IS SO ORDERED.**

DATED: September 14, 2012          /s/ Greg Kays
                                   GREG KAYS, JUDGE
                                   UNITED STATES DISTRICT COURT